**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **EARL WALTERS,** | **COMPLAINT** |
| **Plaintiff,** | **Dkt. No. 24CV8111** |
| **-against-** | |
| **VITO NAVARRA, POLICE OFFICERS AND/OR POLICE DETECTIVES JOHN AND/OR JANE DOES 1-10, AND THE CITY OF NEW YORK,** | |
| **Defendants.** | |

**PLEASE TAKE NOTICE** that Plaintiff Earl Walters, through his attorneys, Glenn A. Garber, P.C., hereby alleges as follows:

**NATURE OF THE CASE**

1.      This is a wrongful conviction case.

2.      At the age of seventeen, Earl Walters was in High School and had a promising life ahead of him. But things went awry.  He was taken by police from his home and held alone in custody for 16 hours while he was subjected to guilt-presumptive interrogation and fed facts about two carjackings, robberies and abductions ("abductions") that he had nothing to do with. He succumbed to the unrelenting pressure and falsely confessed to the crimes. The only evidence against him was the confession and a dubious identification.

3.      An indictment and trial followed, and Walters was convicted by a jury despite his innocence.

4.      Walters spent more than 20 years behind bars until he was released to parole. Years later he was finally exonerated on the joint motion of the Queens County District Attorney's after

1

an exhaustive reinvestigation by the Conviction Integrity Unit (CIU).

5.      The reinvestigation culminated with fingerprint comparison evidence that implicated the true culprits. The culprits committed other similar crimes after Walters' arrest and while his case was pending. The exonerating evidence was available in 1992, and fingerprint comparisons should have been made then. The police considered the other cases to be part of a pattern and related to Walter's case, however, they withheld this exculpatory evidence.

6.      Walters lost his liberty, his young adulthood, and so much more. He continues to pick up the pieces of his broken life in the wake of two decades of unfathomable suffering in some of the worst prisons in New York State.

7.      This cause of action raises violations of Walters' civil rights under 42 U.S.C. § 1983 and under state law, and involves, among other things, the deprivation of his rights against self-incrimination, due process of law, a fair trial, and malicious prosecution.

8.      Compensatory and punitive damages are sought for the wrongdoings of the lead detective Vito Navarra, John and/or Jane Does, and the City of New York on the theory of *respondeat superior.*

## JURISDICTION AND VENUE

9.      This Court has original subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because these claims arise under a law of the United States, namely 42 U.S.C. § 1983, and seek redress of the deprivations under color of state law, of rights guaranteed by the United States Constitution.

10.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

11.     Walters complied with the requirements of New York General Municipal Law Section 50-i by timely serving a notice of claim on the City of New York on November 18, 2023. More than 30 days have elapsed since the notice of claim, and no offer of settlement has been made.

12.     Walters was deposed at a hearing pursuant to New York General Municipal Law Section 50-h on August 1, 2024.

13.     Venue is lodged in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because substantial parts of the events or omissions giving rise to the claim occurred in the Eastern District of New York, including, but not limited to, Walters' interrogation, false confession, wrongful prosecution, and wrongful conviction.

14.     At all relevant times in this Complaint and currently some of the defendants reside, work, and/or have their principal places of business within the jurisdiction of the District Court for the Eastern District of New York.

### JURY DEMAND

15.     We demand a jury trial in this action.

**PARTIES**

16.     Walters was wrongfully prosecuted, tried, convicted, and imprisoned by the actions of the Defendants named herein.

17.     Defendant City of New York is a municipal corporation existing by virtue of the laws of the State of New York and is a political subdivision of the State of New York.

18.     The City of New York is liable under the doctrine of *respondeat superior* for the conduct of its employees.

19.    The New York City Police Department ("NYPD") is an agent of the Defendant City of New York, and the City of New York is responsible for the acts and omissions of the NYPD and its employees.

20.    Defendant Detective Vito Navarra was at all relevant times a detective employed by the City of New York. He is being sued in an individual capacity.

21.    Defendant police officers and/or detectives John and/or Jane Does 1-10 were at all relevant times employed by the City of New York. They are being sued in individual capacities.

22.    Defendant Vito Navarra and Police Officers and/or Police Detectives John and/or Jane Does 1-10, are referred to as the "Individual Defendants."

23.    At all relevant times the Individual Defendants acted under color of state law.

24.    At all relevant times the Individual Defendants acted individually and in concert and conspiracy, and deliberately and recklessly.

25.    Defendants caused the wrongful indictment, prosecution, conviction and incarceration of Walters.

## FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS

### Procedural History

26.    The indictment stemmed from two separate incidents on September 2 and September 24, 1992.  Both were consolidated into one indictment (4505-1992) that was issued on October 29, 1992.

27.    In 1994, Walters was tried and convicted by a jury of robbery in the first degree (P.L. § 160.15(4), two counts of robbery in the second degree (P.L. §§ 160.10(1) and (2)(a), assault in the second degree (P.L. § 120.05), and kidnapping in the second degree (P.L. § 135.20). All the charges are felonies under the laws of the State of New York.

28.     On March 22, 1994, Walters was sentenced to 12 1/2 to 25 years for robbery in the first degree, 5 to 15 years for one count of second-degree robbery, 2 1/3 to 7 years for assault, and 8 1/3 to 25 years for kidnapping, to be served concurrently, but consecutive to a sentence of 5 to 15 years for a separate count of robbery in the second degree.[1] All told, the sentence was 17 ½ to 40 years.

29.     The jury trial and sentencing was before Justice Pearle Appelman in Supreme Court of the State of New York, Queens County, Criminal Term, located in the Eastern District of New York.

30.     On November 24, 1997, the Appellate Division, Second Department, affirmed the conviction.  *People v. Walters,* 244 A.D.2d 587 (2d Dept. 1997). Leave was denied by the Court of Appeals on February 17, 1998. *People v. Walters,* 91 N.Y.2d 931 (1998).

31.     Walters served over 20 years behind bars before he was released to parole in 2013.

32.     On August 24, 2023, attorneys for Walters and the Queens County District Attorney's Office moved jointly to vacate the conviction.

33.     That same day the motion was granted by a Justice of the Supreme Court, Michelle Johnson, and all charges against Walters contained in the indictment were vacated, and the indictment was dismissed.

### The Crimes

34.     On September 2 and 24, 1992, two women were abducted as they were parking their cars late at night.

35.     The September 2 attack started in a Borough Park neighborhood in Brooklyn. Two black men approached a twenty-eight-year-old woman as she was parking her friend's car in front

---

[1]     Walters was acquitted of sex crimes and charges related to injuries and use of weapons.

of her building. They forced her into the rear seat at gunpoint, pistol-whipped her, and drove her to a Citibank on Hillside Avenue in Queens where they used her ATM card to withdraw $1,900 in cash from her account.

36.    The September 24 attack occurred in Flushing, Queens. Two men driving a stolen car approached a fifty-eight-year-old woman around the corner of her apartment building as she was exiting her car. The passenger of the stolen car jumped out, pushed the victim back into her car, punched her in the face, slammed her head against the steering wheel, and threw her into the back seat. The assailant then pressed her to the floor and threatened her with a gun. After the second assailant got into the driver's seat a blanket was tossed over the victim.  They drove to an ATM machine on Northern Boulevard in Queens and withdrew $240 from her account.

37.    The woman's life was threatened during the incident, and one of the men strangled her with rope and sexually assaulted her. They drove to Brooklyn, where they dragged her out of the car, threw her over a fence, and urinated on her. She described the two men as being in their 20s and speaking with thick Jamaican accents.[2]

38.    The car initially used by the assailants was found double-parked at the scene of the abduction, still running. The ignition was "popped", and the car had been reported stolen from a residential neighborhood in Nassau County the prior evening.

39.    The police found several latent fingerprints on the car, and Walters was excluded as the source.

### The Focus on Walters, the Interrogation, and the Line-up

40.    Walters emerged as a suspect because of his relationships with Dean Black and

---

[2]    Although Walters was born in Jamaica, he was seven when he came the United States and does not speak with a Jamaican accent.

Craig Jackson, neither of which had anything to do with the September 2nd and 24th carjackings. Walters was dating Black's sister and would hang out with Black. Walters knew Jackson through Black but was not that close to him.

41.     Black and Jackson become suspects in the September 21, 1992, murder of Leopold Greaves. Both admitted to their involvement in that crime and were convicted after trial.

42.     On September 30, 1992, as part of the Greaves' homicide investigation Black was interrogated by homicide detectives and confessed to the Greaves's murder. He was then questioned by Defendant Detective Vito Navarra from the Queens Special Victim Squad (QSVS) who was assigned to the September 24th carjacking and sexual assault case. According to Navarra, Black implicated Jackson, saying Jackson told Black that he pulled up in a car that met the description of the one taken in the September 24th carjacking, showed him over $2,000, claimed he and an unnamed friend took a woman to her bank and stole money from her, and that he tied her up in the rear of the vehicle.[3]

43.     On October 1, 1992, the victim of the September 2nd abduction was reinterviewed by Navarra. After viewing a photo array for four or five minutes she was reported as saying that number two (Walters) looked like the person in the back seat but that she would need to see him in person to be sure.

44.     On October 2, 1992, the police determined that Walters' thumb print was located at the top of the window inside the rear left passenger door of the abandoned car associated with

---

[3]     Neither Black nor Jackson's fingerprints matched the latent prints from September 24th case, neither were identified as participants in the September 2 or September 24th abductions, and when interviewed by the CIU Black denied Navarro's account that he implicated Jackson in one of those cases.

the Greaves' murder.[4]

45.     Jackson then allegedly implicated Walters as the shooter in the Greaves' case, and said that another person, Donovan Scotchman, was also present.[5]

46.     On October 7, 1992, Walters was taken into custody by homicide detectives and was initially interrogated about the Greaves' murder. Confronted with the fingerprint on the car, alleged incrimination by others about his involvement, and promises of being a cooperator for the prosecution, Walters' signed a statement indicating he was a witness to but did to participate in Greaves' homicide.[6]

47.     After Walters had been in the precinct for about four hours, Det. Navarra arrived. He focused on the September 2nd and 24th abductions and Walters was subjected to lengthy interrogations about these cases that consumed much of the next twelve hours. Walters remained isolated from the outside world and sleep deprived.

48.     Walters clung to his innocence for hours before he started to crack.

49.     During the interrogations, Navarra bombarded Walters with questions that implied his guilt in the September abductions and confronted him with false-evidence ploys. For example, Navarra told him that one of the victims unequivocally identified him, which was not true. Navarra also said that Black "told him all about it" which could not have been true. These lies unnerved Walters.

---

[4]     Walters explained to the CIU that Black and Jackson pulled up in a stolen car and asked him to join them. He was with Black's sister at the time and declined their invitation. Walters stated that he may have touched the car as he peered inside of it.

[5]     Jackson's statements about Walters were contradicted by Black, Scotchman and Walters. And Walters was never charged with or prosecuted for the Greaves' case.

[6]     Black and Jackson were tried separately, and Walters was not called as a witness at either trial.

50.    At points, Navarra left Walters alone in the interview room and looked for locations that Walters discussed, but he could not find them.

51.    Navarra revealed facts to Walters about the crimes and eventually constructed a false narrative that implicated Walters. Navarra committed the narrative to two written statements and persuaded Walters to sign them.

52.    Navarra then took Walters out of the precinct and showed him the locations of the banks where the ATM robberies occurred. Afterwards, about 9 or 10 p.m., Navarra brought Walters to the Queens Special Victim Office at the 112th Precinct.

53.    Around midnight Navarra instructed Walters to rewrite the statements in his own handwriting and to use some of his own words because it would be more convincing to the prosecutor. Navarra also told Walters to repeat the false story to prosecutors, which would be helpful to him.

54.    The questioning was capped off by a videotaped statement taken by an Assistant District Attorney with Navarra present at 2:33 a.m. on October 8, 1992.  It shows an exhausted, and distraught teenager, looking like "a deer in the headlights." Although Walters was able to follow the script to some extent the video statement contained assertions that were at odds with the evidence and the accounts by both victims.

55.    Walters was arraigned on a felony complaint later that same day and remanded without bail. He was subsequently indicted on October 29, 1992.

56.    After the indictment on November 24, 1992, Walters was placed in a six-person lineup at the 66th Precinct in Queens for the September 2nd offense. The victim, who had previously made a questionable identification from a photo array, picked out two fillers and did not identify Walters.  They stepped out, and Det. Navarra suggested to the witness that #5 (Walters) was the

9

perpetrator. The lineup resumed, and Walters was identified.

### Three Similar Abductions in October 1992

57.    After Walters was arrested and confessed and while he languished in jail prior to indictment, three robberies occurred in Queens that were remarkably similar to the September 2nd and 24th cases. They happened on October 11th, 14th and 19th. All were in the evening or early morning hours; the female victims were sexually assaulted in each case; and, in two, the abductors brought the victims to ATM machines to rob them.

58.    The descriptions of the assailants were virtually the same in the three October cases and in the September 2nd and 24th cases that Walters was charged with.

59.    The police viewed the October crimes as part of pattern, and they linked them to the September 2nd and 24th crimes.

60.    Det. Navarra, who obtained Walters's confession, was assigned to investigate the October 11th case. The Queens Robbery Squad (QRS) investigated the three new cases with the QSVS, Navarra's squad, and conferred with Navarra. And references appear in the pattern robberies case file to Walters, Black, the stolen car from Nassau County used in the September 24th abduction, and the stolen car in the Greaves' case. But this information was suppressed by the Individual Defendants and was not provided to Walters or his counsel.

61.    The police investigation into the October robberies led to Kraigory Odom, Robert Masters and Jermaine Williams. All three men admitted to participation in the October 19th case. Williams was then identified in the October 11th case; and Masters was identified in the October 14th and 19th cases.

62.    Prior to Walters trial, Odom and Williams pled guilty, and on March 22, 1994, the same day Walters was sentenced, Masters pled guilty. Odom, Williams and Masters were all

sentenced to state prison.

## Trial and Sentence

63.    Walters' trial commenced in January 1994.

64.    The trial evidence primarily consisted of Walters's confession and the purported "identification" by the victim of the September 2nd abduction. The verdict was rendered on February 2, 1994. No evidence was presented at trial about the October 1992 pattern robberies, fingerprint comparisons or alternate perpetrators because Walters and his counsel were not made aware of it.

65.    At Walters' sentencing the Court's comments were particularly harsh. Judge Appelman, who also presided over the trial said:

> Mr. Walters, I have been on the bench, I think I'm in my 12th year on the bench. I have processed many cases. I don't think I have processed many uglier, more egregious than this particular one.

> \*\*\*

> And this was a most egregious trial. The acts that you and your companion committed were heartless and to say that there was something redeeming in that you refused to hurt somebody, these women are permanently injured. They will never be the same after these incidents. They are hurt. The pain was evident on the stand. I watched them. I listened to them. I saw their tears flow. I saw the trauma they had gone through. They were hurt.  These women will never be the same.

> \*\*\*

> So you stand before me convicted of two different victims of the most egregious crimes that I have ever presided over, short of a homicide, in my career.

> \*\*\*

> Mr. Walters, I'm afraid that the time has come for you to look into my face and I into yours and for you to realize that you have committed a most egregious crime and will pay a very high penalty for this crime.

66.    Walters maintained his innocence and responded:

Your honor, I am sorry. I'm deeply sorry for what happened to the victims and I feel for them, I really do. But who's going to tell my (sic) sorry for something I didn't do? I feel for them. I can imagine the pain they went through. I can imagine the nightmares they had and felt and never got over it. But they didn't do anything and it happened to them. I didn't do anything and it happened to me. Who tells my story? I was an innocent victim. I was at home and was just pulled out.

67.    The Court imposed a sentence of 17 ½ to 40 years, the maximum terms on the top counts for the September 2nd and 24th offenses and set them to run consecutively. Over twenty years passed before Walters was released to parole.[7]

### The Exoneration

68.    In 2020, the CIU under the newly elected Queens County District Attorney Melinda Katz commended a reinvestigation. It included the review of files from the October 1992 pattern robbery cases and a comparison of the latent prints from the car recovered on the September 24th case.

69.    Without naming any suspects, the CIU asked the NYPD's Latent Print Section (LPS) to re-examine the fingerprint evidence in Walters' case and compare all suitable prints against the Automatic Biometric Identification System (ABIS).  ABIS identified Williams as a candidate for examination, and, upon further work by the LPS, Williams was found to be the source of three prints found on the car left at the scene of the abduction in the September 24th case.

70.    A subsequent manual fingerprint comparison identified Masters as contributing a fingerprint to the driver's side door of the same vehicle.

71.    Prior post-conviction DNA testing of a mixture on the skirt of the victim from the

---

[7] The sentence was concurrent with relatively minor unrelated robbery charges that Walters pled guilty to. These dispositions occurred after the wrongful prosecution commenced, which loomed over and affected the other cases. Walters was eligible for youthful offender treatment, and had it not been for the wrongful prosecution on the abduction cases, Walters likely would have received YO status and no jail time on the unrelated matters, instead of the 3-to-9-year sentence he received.

September 24th abduction excluded Walters as a contributor; and additional DNA testing by the CIU excluded Black as a contributor, eliminating any forensic evidence corroborating Walters's confession.

72.     With the new fingerprint workup viewed against Walters' uncorroborated confession, dubious identification, the similar pattern abductions, and the otherwise weak case against him, District Attorney Katz, acting on the recommendation of the CIU, moved with Walters's counsel to vacate his conviction and dismiss the indictment.

73.     Upon granting the motion on August 24, 2023, Queens County Supreme Court Justice Michelle Johnson, essentially apologized to Walters on behalf of the criminal justice system for the grave injustice he was forced to endure.

### FIRST CAUSE OF ACTION

**42 U.S.C. § 1983 Claims for Violations of the Rights Against Self-Incrimination, Due Process of Law, and a Fair Prosecution and Fair Trial under the Fourth, Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution**
**(Against the Individual Defendants)**

74.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein, and further alleges as follows.

75.     On or about October 7 and 8, 1992, the Individual Defendants used coercive and manipulative interrogation techniques to cause Walters to falsely and involuntarily confess and to unlawfully become a witness against himself.

76.     The coercive and manipulative interrogation techniques used by the Individual Defendants included, among other things, exploiting Walters' young age of 17, and other vulnerabilities to induce a false confession; isolating him from family and support; depriving him of sleep; prolonging the duration of this custody and of the interrogation to break his will; using lies, false-evidence ploys, guilt-presumptive questioning, trickery and deceit; creating the

environment that Walters would be held captive until he confessed; building a rapport and developing a false trust with Walters; minimizing the severity of a confession by, among other things, falsely offering to use Walters as a cooperator; suggesting that he would receive leniency if he confessed; threatening severe penal consequences including if he did not confess; feeding him facts about the crime he did not know; crafting a false narrative about the crime for Walter's to adopt; and persuading Walters to repeat the story to prosecutors claiming it would help him.

77.     As a result of the Individual Defendants' actions, Walters' will was overborne and his false confession was not a product of his free will and/or rational intellect; and he was deprived of his right not to be compelled to become a witness against himself in violation of the Fifth and Fourteen Amendments of the U.S. Constitution.

78.     The Individual Defendants concealed and lied to prosecutors about the true nature of the interrogation and confession, and instead forwarded false information to prosecutors about how the confession was obtained.

79.     Prosecutors then relied on the falsehoods and used them to unfairly indict, prosecute, try, and convict Plaintiff. This included unfairly undermining his right to fairly and effectively litigate a motion to suppress involuntary and inadmissible statement evidence (*Huntley* motion and hearing).

80.     The Individual Defendants undermined these rights in violation of clearly established law at the time under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

81.     These violations were the proximate cause of Plaintiff's unfair and wrongful indictment, prosecution, trial, conviction, and incarceration.

82.    The Individual Defendants acted individually and in concert and conspiracy, and deliberately, and recklessly.

83.    No reasonable police officer before and after 1992 would have believed that the actions of the Individual Defendants was reasonable and lawful.

84.    Consequently, the Individual Defendants are liable to Walters under 42 U.S.C. § 1983 for damages.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 Claims for Violations of Due Process of Law, and a Fair Prosecution and Fair Trial under the Fourth, Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution (Against the Individual Defendants)

85.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth herein, and further alleges as follows.

86.    On November 24, 1992, the Individual Defendants improperly and unlawfully suggested to the victim from the September 2, 1992 abduction that Walters, positioned as #5 in a corporeal line-up, was the perpetrator.

87.    This conduct caused the victim to unfairly identify Walters.

88.    The identification was unreliable and obtained in violation of the Fifth and Fourteen Amendments of the U.S. Constitution and *United States v. Wade*, 388 U.S. 218 (1967), and its progeny.

89.    The Individual Defendants concealed and lied to prosecutors about the true nature of the identification procedure, and instead forwarded false information about the procedure to prosecutors.

90.    Prosecutors then relied on the falsehoods and used them to unfairly prosecute, try, and convict Plaintiff. This included unfairly undermining his right to fairly and effectively litigate

15

a motion to suppress suggestive and inadmissible identification evidence (*Wade* motion and hearing).

91.    The Individual Defendants undermined these rights in violation of clearly established law at the time under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

92.    These violations were the proximate cause of Plaintiff's unfair and wrongful prosecution, trial, conviction and sentence.

93.    The Individual Defendants acted individually and in concert and conspiracy, and deliberately, and recklessly.

94.    No reasonable police officer in 1992 or thereafter would have believed that the actions of the Individual Defendants was reasonable and lawful.

95.    Consequently, the Individual Defendants are liable to Walters under 42 U.S.C. § 1983 for damages.

### THIRD CAUSE OF ACTION

**42 U.S.C. § 1983 Claims for Violations of the Right to a Fair Prosecution and a Fair Trial under the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution (Against the Individual Defendants)**

96.    Plaintiff incorporates and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein and further alleges as follows.

97.    The Individual Defendants concealed the truth and instead forwarded Walters' false and involuntary confession to prosecutors who used it against him to improperly and unfairly charge him, jail him, indict him, prosecute him, try him, convict him, and secure a lengthy prison sentence.

98.     The Individual Defendants also concealed the truth and instead forwarded false information to prosecutors about a suggestive identification procedure of Plaintiff which was used by prosecutors to improperly and unfairly prosecute him, try him, convict him, and secure a lengthy prison sentence.

99.     The Individual Defendants had an obligation to provide truthful information to prosecutors, Walters and his counsel about their investigation and to not omit material and exculpatory information and evidence, under the Fourth, Fifth, Sixth and Fourteenth Amendments of the U.S Constitution, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny.

100.    The cover up and lies to prosecutors about the improper nature of their investigation, the falsity and unreliability of the evidence against Plaintiff, and the withholding of exculpatory and impeachment material was in contravention of these rights which were clearly established at the time.

101.    These violations were the proximate cause of Plaintiff's unfair and wrongful indictment, prosecution, trial and conviction.

102.    The Individual Defendants acted individually and in concert and conspiracy, and deliberately, and recklessly.

103.    No reasonable police officer in 1992 or thereafter would have believed that the actions of the Individual Defendants was reasonable and lawful.

104.    Consequently, the Individual Defendants are liable to Walters under 42 U.S.C. § 1983 for damages.

## FOURTH CAUSE OF ACTION

**42 U.S.C. § 1983 Claims for Malicious Prosecution and Deprivation of Liberty under the Fourth and Fourteenth Amendments of the U.S. Constitution and New York State Law (Against Individual Defendants and the City of New York)**

105.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth herein, and further alleges as follows.

106.    The Individual Defendants caused the initiation and continuance of criminal proceedings against Plaintiff, including obtaining a false and involuntary confession against Plaintiff, forwarding a false account of the investigation, interrogation and confession to prosecutors, and drafting false police reports that were forwarded to prosecutors which resulted in the wrongful prosecution of Plaintiff.

107.    There was no probable cause for the criminal proceeding against Plaintiff, and the Individual Defendants knew it.

108.    The prosecution was unaware of the false and fabricated evidence and unknowingly presented it to the grand jury and obtained an indictment based upon it.

109.    The prosecution terminated in Plaintiff's favor when his conviction was vacated and the indictment against him was dismissed on August 24, 2023.

110.    The Individual Defendants acted willfully and with actual malice.

111.    Consequently, the Individual Defendants are liable to Walters under 42 U.S.C. § 1983 for damages.

112.    And the City of New York is liable to Plaintiff under New York state law for the tortious actions of the Individual Defendants under the doctrine of *respondeat superior* and is responsible for damages.

**FIFTH CAUSE OF ACTION**

**Violations of the New York State Constitution**
**(Against The Individual Defendants and the City of New York)**

113.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth herein, and further alleges as follows.

114.    By virtue of the aforementioned acts, the Individual Defendants are liable to Plaintiff for violating his right against self-incrimination, due process of law, and to fair pretrial motions and hearings and a fair trial under Article I, § 6 of the New York State Constitution, and his right to be free of unreasonable and unlawful searches and seizures under Article I, § 12 of the New York State Constitution.

115.    Defendant City of New York is liable for these violations of the New York State Constitution under the principle of *respondeat superior.*

**SIXTH CAUSE OF ACTION**

**Negligent Hiring, Training, Supervision, Retention, and Discipline**
**under New York State Law**
**(Against the Defendant City of New York)**

116.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein, and further alleges as follows.

117.    Defendant City of New York is liable to Plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, retain and discipline its agents and/or employees employed by the NYPD, including the Individual Defendants, with regard to the duties and actions described above.

118.    Consequently, Defendant City of New York is liable to Plaintiff for damages.

## DAMAGES

119.    As a direct and proximate cause of Defendants' actions and inactions, Plaintiff was deprived of his civil rights under the Fourth, Fifth, Sixth, and Fourteen Amendments of the United States Constitution and under the laws of New York.

120.    This action seeks damages from on or about October 7, 1992, through more than 20 years of wrongful incarceration, to the present, and beyond.

121.    The unlawful, intentional, willful, deliberately indifferent, reckless, negligent, wanton and/or bad-faith acts and omissions of Defendants caused Plaintiff to be forced to make statements against his will, maliciously prosecuted him, unfairly charged, tried, wrongfully convicted, and unfairly sentenced him, deprived him of liberty, falsified evidence against him, deprived him of material and exculpatory evidence, and subjected him to illegal searches and to abuse and indignities during his incarceration and on parole.

122.    The wrongful acts and omissions of Defendants caused, among other things, the following injuries and damages to Plaintiff which were foreseeable to Defendants at the time of the acts and omissions and which continue to date and will continue into the future: susceptibility to physical assaults and batteries and physical assault and batteries, physical injuries, pain and suffering, mental anguish, emotional distress, psychological damage, loss of liberty, loss of relationships, loss of family, loss of companionship, loss of consortium, loss of guidance, loss of emotional and psychological development, loss of maturing in a natural environment, loss of educational opportunity, loss of vocational training, loss of professional opportunity, loss of income, susceptibility to illness and illness, inadequate medical care, humiliation, embarrassment, degradation, and restrictions on diet, sleep, personal contact, athletics, personal growth and fulfillment, sexual activity, enjoyment and free expression.

123.    Such acts and omissions of Defendants were cruel, wanton and outrageous and Plaintiff is entitled to compensatory and punitive damages.

**WHEREFORE**, it is respectfully requested that this Court grant judgment in favor of Plaintiff against the Defendants in the nature of:

(A)    Compensatory damages in an amount to be determined;

(B)    Punitive damages in an amount to be determined;

(C)    Pre-judgment interest as allowed by law;

(D)    An order awarding Plaintiff reasonable attorneys' fees, together with the costs and disbursements, pursuant to 42 U.S.C. § 1988 and the inherent powers of this Court; and

(E)    Such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        November 21, 2024

**GLENN A. GARBER, P.C.**

By:    _____
        Glenn A. Garber

The Woolworth Building
233 Broadway Suite 2370
New York, New York 10279
(212) 965-9370
*Attorney for Plaintiff Earl Walters*