GLENN A. GARBER, P.C.
ATTORNEYS AT LAW
GLENN A. GARBER
(ADMITTED IN NY & NJ)

THE WOOLWORTH BUILDING
233 BROADWAY, SUITE 2370, NEW YORK, NY 10279
TEL: 212-965-9370 FAX: 212-965-9375
WWW.GLENNGARBER.COM

November 12, 2026

**BY ECF**
Honorable Judge Ramon Reyes
US District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Walters v. Navarra, et al.,* Dkt. No. 24CV8111 (RER/PCG)

Dear Judge Reyes,

We submit this letter to request a pre-motion conference regarding leave to amend the complaint under FRCP 15. *Rule 4A.*

Earl Walters was convicted in 1994 of two horrific carjackings, kidnappings, and robberies that occurred on September 2 and 24, 1992. Despite his innocence, Walters, only 17 at the time, confessed to these crimes during 16 hours of coercive, fact-fed interrogation. In 2023, after serving nearly 20 years in prison, Walters' convictions were vacated and the indictment dismissed on the motion of the Queens County District Attorney's Office (QCDAO).

The thrust of the complaint alleges police misconduct against former Detective Vito Navarra (deceased) for coercing Walters' confession and conducting an improper lineup.[1] Plaintiff now moves for leave to amend the complaint to add due process and unfair trial claims against the City of New York as a result of District Attorney Richard Brown and members of the QCDAO suppressing crucial, exonerating, alternate perpetrator evidence.[2] As already alleged in the complaint, after Walters was arrested on October 7, 1992 and held on bail, three extremely similar abductions were committed in Queens on October 11, 14, and 19, 1992. Robert Masters, Jermaine Williams, and Kraigory Odom were charged for these crimes, and no evidence connected Walters or his initial codefendant to the three other men or the October crimes.[3] The police files for Masters, Williams and Odom prosecutions were never disclosed to Walters' trial counsel.[4]

---

[1] The First Amended Complaint, which merely added Ann Marie Fields as the representative for Navarra's estate, appears on the docket at entry 15.

[2] Proposed Amended Complaint attached as Exhibit A. A redlined version of the Proposed Amended complaint compared to the First Amended Complaint is attached as Exhibit B.

[3] All three men pleaded guilty to the October 19 abduction. Masters pled guilty to the October 14 abduction. The October 11 abduction was discontinued but witnesses identified Williams as a perpetrator and the Citibank that was used to steal the victim's money was the same branch that was used in the September 2 abduction.

[4] For a full recitation of the similarities between the September and October abductions, see Dkt. Entry 15, Amended Complaint at paragraphs 57-62; see also, Exhibit C, Affirmation of ADA John McGoldrick in support of motion to

GLENN A. GARBER, P.C.
ATTORNEYS AT LAW
GLENN A. GARBER
(ADMITTED IN NY & NJ)

THE WOOLWORTH BUILDING
233 BROADWAY, SUITE 2370, NEW YORK, NY 10279
TEL: 212-965-9370 FAX: 212-965-9375
WWW.GLENNGARBER.COM

No forensic evidence linked Walters to the September 2 and September 24 abductions. Latent prints were lifted from a car used in the September 24 crime. Thirty years later in 2022, the QCDA's CIU, on Walters' insistence, compared the latent prints from the car to the known prints of Masters, Williams, and Odom. Matches were made to Williams' palm prints and Masters' fingerprint. This forensic breakthrough fundamentally undermined Walters' confession to the September 2 and September 24 crimes and led to his exoneration.

The withheld, exculpatory, alternate perpetrator evidence included documented connections made by the Queens robbery squad indicating that the September and October abductions were part of the same pattern. Notably, these connections were made in October and November of 1992, early into Walters' prosecution. And they were brought to Det. Navarra's attention, who led the investigation against Walters. Relevant to this application, discovery provided by the QCDAO in this action contains three press releases with statements directly attributed to then DA Brown that show he personally knew about the connections.[5]

Most notably, in a November 19, 1992 press release regarding the indictments of Masters, Williams and Odom for the October abductions, DA Brown explicitly linked the October 11 abduction committed by Masters, Williams, and Odom to the September 2 crime to which Walters confessed.

> The Citibank branch which was the scene of the October 11th crime was the same one where a woman, abducted from Brooklyn on September 2nd, was forced to use her ATM card to withdraw $2,900. District Attorney Brown has said, "If the camera at that branch, which was found to be without film, had been functioning properly, the later crime might have been avoided because the perpetrators might have been arrested already."

(Exhibit E)(quotes in original).[6]

This connection between the September and October 1992 abductions was noted by DA Brown early on in the prosecution of Walters and as he languished in jail. Given Brown's documented involvement in these cases, it is very likely (and certainly plausible to conclude) that he knew the detailed connections between the sets of cases was not disclosed and did nothing to rectify it; or worse, that he colluded with his subordinates to withhold the evidence from Walters'

---

vacate Walters' conviction at paragraphs 42-48, 78-79.

[5] Exhibits D, E, F attached.

[6] Notably, it was the connections between the October crew and the September crimes that caused the CIU to compare latent prints from the car used in the September 24 crime to the known prints of Masters, Williams and Odom, and that led to Walters' exoneration.

GLENN A. GARBER, P.C.
ATTORNEYS AT LAW
GLENN A. GARBER
(ADMITTED IN NY & NJ)

THE WOOLWORTH BUILDING
233 BROADWAY, SUITE 2370, NEW YORK, NY 10279
TEL: 212-965-9370 FAX: 212-965-9375
WWW.GLENNGARBER.COM

trial counsel.[7] Either way, Brown was responsible for the suppression of *Brady* material which was a cause of Walters' wrongful conviction. Amendment to the complaint is appropriate to hold former DA Brown and the City to account for their constitutional violations that caused Walters to suffer wrongful conviction and nearly twenty years in prison.

**<u>Discussion</u>**

Federal Rule of Civil Procedure 15(a)(2) prescribes that leave to amend a complaint should be "freely given" so that legitimate claims can be decided on the merits. This Circuit allows amendments "in the absence of a showing by the non-movant of prejudice or bad faith." *Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993). Mere delay, without more, is not grounds to reject an otherwise meritorious amendment. *Foman v. Davis,* 371 U.S. 178, 183 (1962).

There has been no prejudice to Defendants here and there is surely no bad faith by Plaintiff. His claim was filed on November 11, 2024. On March 25, 2025, he filed an amended complaint naming defendant Ann Marie Fields as the representative of Navarra's estate. (Dkt. 15). Defendant City of New York answered on April 22, 2025 (Dkt. 18), and Defendant Fields answered on April 24, 2025 (Dkt. 19). For the past year, the parties have been engaged in paper discovery which largely focused on disclosures by the QCDAO (over 11,000 pages). The Court ordered that fact discovery be completed by February 1, 2027. And no depositions have been conducted yet.

There can be no doubt that the connection between the October crew and the September crimes was exculpatory and had to be disclosed. There is nothing more exculpatory than evidence that another individual committed the crime. *Miller v. Angliker*, 848 F.2d 1312 (2d Cir. 1988); *Grant v. Alldredge*, 498 F.2d 376 (2d Cir. 1974). Exculpatory material qualifies as *Brady* if it is "favorable" to the defense, regardless of whether the prosecution firmly believed in the defendant's guilt or if they acted in good faith. *Brady v. Maryland,* 373 U.S. 83, 87 (1963)(an alternate perpetrator case).

In *Miller,* 848 F.2d 1312, the defendant was charged with strangling and murdering prostitutes. He signed a written confession under coercive tactics eerily similar to those in the instant case. *Id.* at 1315-16. However, the prosecutor never turned over evidence that another man, Robert Lupinacci, committed the murders. *Id.* at 1315-16. The police file established that Lupinacci was arrested while strangling a prostitute 100 feet of where three of the Miller's victims were strangled. *Id.* at 1315-16. The Second Circuit held that that alternate perpetrator evidence was clearly *Brady* even though the defendant confessed. *Id.* at 1323.

It cannot be disputed that the alternate perpetrator evidence in this case qualifies as *Brady*. The only question is whether Brown had a hand in the suppression. The discovery proves it.

GLENN A. GARBER, P.C.
ATTORNEYS AT LAW
GLENN A. GARBER
(ADMITTED IN NY & NJ)

THE WOOLWORTH BUILDING
233 BROADWAY, SUITE 2370, NEW YORK, NY 10279
TEL: 212-965-9370 FAX: 212-965-9375
WWW.GLENNGARBER.COM

The three press releases make clear that DA Brown was personally invested in the September and October abduction cases and that he believed that both sets of abductions were committed by the same people. First, DA Brown released a statement on October 8, 1992 detailing the allegations that Walters committed the September 2 and September 24 abductions. *Exhibit D.* Second, on November 19, 1992, DA Brown released a press release announcing the indictment of Masters, Williams, and Odom for the October abductions. *Exhibit E.* That press release draws an explicit connection between the September and October abductions and includes a quote from Brown explicitly linking the cases. Third, on March 24, 1994, after Walters' conviction, Brown released another public statement which states that Walters' crime fit the "same pattern" of the crimes for which Masters, Williams, and Odom were convicted. *Exhibit F.*

DA Brown's public statements show that he was personally overseeing the prosecutions of the September and October abductions or was involved with them in a managerial capacity. His quote in the November 19, 1992 press release leaves no doubt that Brown personally analyzed the cases and concluded that the individuals who committed the October 11 abduction were the same individuals who committed the September 2 abduction. And the March 24, 1994 press release establishes that Brown and the office continued to think that these cases fit the same pattern as the separate prosecutions progressed and even after convictions were obtained. On these facts, with DA Brown's knowledge and involvement in the cases, it is plausible to conclude that he had a hand in the suppression of the alternate perpetrator evidence, or that he was aware of it.

A municipality is liable when a municipal policymaker, such as a DA, establishes a policy that causes a constitutional violation. *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978); *Walker v. City of New York,* 974 F.2d 293 (2d Cir. 1992)(ruling the District Attorney is a municipal policymaker when he acts in a managerial function). Because DA Brown was the final policymaker in the QCDAO, his failure to disclose *Brady* material and/or deliberate indifference to suppression constituted an office policy and makes the City liable. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)(single decision by policymaker can establish an unconstitutional policy).

Here, Plaintiff can plausibly allege that DA Brown suppressed *Brady* material and/or was deliberately indifferent to its suppression; that he was policymaker; that his actions amounted to an unconstitutional office policy of withholding exculpatory evidence; and that his actions and/or policy were the proximate cause of Walters' wrongful conviction and lengthy incarceration.

Therefore, Plaintiff requests that the Court hold a pre-motion conference and if appropriate construe this pre-motion letter and oral argument as the motion to amend the complaint and grant leave to amend. (*See Rule IV (5)).*

Respectfully,

Alex Garber

cc: All counsel by email and ECF