**The City of New York**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, N.Y. 10007

**STEVEN BANKS**
*Corporation Counsel*

**JOHN CARNEVALE**
Tel.: (212) 356-2415
Fax: (212) 356-1148
jcarneval@law.nyc.gov

November 19, 2026

**VIA ECF**
Honorable Ramon E. Reyes, Jr.
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Walters v. Navarra, et al.*,
24-CV-8111 (RER) (PCG)

Your Honor:

I am an Assistant Corporation Counsel in the Office of Steven Banks, Corporation Counsel of the City of New York, and represent defendant City of New York in this action. The City respectfully opposes plaintiff's November 12, 2026 request for leave to file the proposed Second Amended Complaint ("PSAC"), adding a *Monell* claim based on former Queens County District Attorney Richard A. Brown's alleged suppression of exculpatory evidence. (ECF Nos. 34-1, 35.) The proposed claim is untimely and independently fails to plead a municipal policy causing the alleged violation. Leave should be denied as futile. See *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

## I. Factual Background

This case arises from the arrest, prosecution, and conviction of plaintiff for various offenses stemming from two carjacking-robbery-assaults in September 1992 in Queens and Brooklyn. Plaintiff was investigated for these crimes following his implication in another carjacking and shooting, including by virtue of his fingerprint on the involved vehicle. Through that investigation, plaintiff was implicated in the crimes for which he was later convicted based on his own confession, a photo array identification by one of the victims, and a subsequent line-up identification by the same victim. Plaintiff alleges various deficiencies or misconduct against the NYPD defendants relating to the confession and identifications.

In 2020, the Queens County District Attorney's Office ("QCDAO") Conviction Investigation Unit ("CIU") was asked to reexamine latent prints collected in the investigation using methods and resources not available at the time of the original prosecution. That testing identified prints from a vehicle used in the second incident for which plaintiff was convicted belonging to two other individuals who had been separately convicted in connection with a string of October 1922 carjacking-robbery-assaults in Queens and Brooklyn. Based upon that newly-discovered evidence, QCDAO joined in a motion to vacate plaintiff's conviction and the indictment against

him, which was granted in 2023. Plaintiff thereafter brought this lawsuit based on allegations of misconduct by NYPD detective defendant Vito Navarra and unnamed NYPD officers. He named the City only on a theory of *respondeat superior* on his state law claims.

## II. The Proposed Amendments Are Time-Barred and Do Not Relate Back

Plaintiff now seeks to set forth a new cause of action, on a new theory of liability, upon the conduct of newly-named individuals. Section 1983 claims arising in New York carry a three-year limitations period. *Owens v. Okure*, 488 U.S. 235, 251 (1989). Applying the favorable-termination accrual rule, plaintiff's claims accrued at the latest when his conviction was vacated and the indictment dismissed on August 24, 2023. See *McDonough v. Smith*, 588 U.S. 109, 120–21 (2019); PSAC ¶¶ 88, 124. The limitations period for any federal claims therefore expired on August 24, 2026. Plaintiff first sought to assert the proposed *Monell* claim on November 12, 2026.

Relation back under Rule 15(c)(1)(B) requires notice of the conduct underlying the new claim through the general factual allegations of the earlier pleading. *Slayton v. American Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006). Although the City was already a defendant, the operative complaint attributed suppression of evidence only to the police and sought to hold the City responsible for police conduct only on *respondeat* grounds. Plaintiff concedes as much in his pre-motion application. (ECF No. 35, p. 1). Plaintiff alleged that Navarra and other unidentified NYPD officers withheld the alternative-perpetrator information. Its negligent-training and supervision claim likewise concerned only NYPD officers. (ECF No. 15 ¶¶ 5, 60, 99–100, 117.) It alleged no knowing suppression, direction, or ratification by Brown or any QCDAO policymaker, or any *Monell* claim at all.

The proposed amendment introduces Brown's allegedly deliberate participation in nondisclosure and his alleged creation of a prosecutorial policy. (PSAC ¶¶ 18–19, 62, 70–82, 128–135.) Those allegations require proof of Brown's knowledge, decisions, and supervision of prosecutors, extending beyond the police conduct described in the operative complaint. The City's presence in the action and the common ultimate injury do not establish notice of those separate acts. The proposed claim therefore rests on a distinct factual basis that does not relate back. See *Slayton*, 460 F.3d at 228. For the same reason, Rule 15(c)(1)(A) and CPLR 203(f), which likewise require notice of the transactions or occurrences underlying the amendment, do not save it.

## III. The Proposed Complaint Does Not Plausibly Allege a Municipal Policy Causing Suppression

Assuming Brown was a municipal policymaker for the challenged conduct, plaintiff must plausibly allege a deliberate policymaker decision or knowing ratification of the challenged conduct. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

Plaintiff alleges that Brown QCDAO believed the September and October crimes were connected and failed to disclose information in that regard, characterized as alternate-perpetrator evidence. In this regard plaintiff cites to several press releases issued by QCDAO relating to both sets of crimes. Plaintiff does not plausibly allege that any information beyond the fact of these crimes was withheld and concedes that information was the subject of public-issued press releases. They say nothing about what prosecutors disclosed to defense counsel. The PSAC identifies no communication, instruction, or disclosure decision supporting its further assertion that Brown knew any relevant materials had been withheld and deliberately caused or approved that nondisclosure. (PSAC ¶¶ 70–82, 129–135.)

Plaintiff also alleges that the March 24, 1994 release changed the meaning of Brown's November 1992 statement to conceal his recognition of the connection. (PSAC ¶¶ 74–76.) The earlier release discusses the September 2 and October 11 crimes at the same Citibank branch. The later release describes Brown's earlier statement as concerning the September 2 and September 24 attacks. (ECF Nos. 34-5 at 2, 34-6 at 1.) Even accepting that discrepancy, the later release does not supply facts showing Brown knew what trial counsel received or approved withholding investigative records. The March release postdated the February 2, 1994 verdict. (PSAC ¶¶ 66, 73.) Its description of the crimes does not plausibly identify a pretrial disclosure decision by Brown.

The assertions that Brown knew of, ratified, and established a policy of suppression consequently rest on an unsupported inference. Although knowledge may be alleged generally, the asserted misconduct must remain plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 686–87 (2009). The alternative custom allegation identifies no other instance or established office practice of condoning *Brady* violations. See *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The single-policymaker theory remains dependent on plausibly alleging Brown's deliberate involvement.

Municipal liability may be assessed for certain DA-office policies, but requires a policy causing the constitutional injury, and preserves an exception for decisions whether, and on what charges, to prosecute. *Bellamy v. City of New York*, 914 F.3d 727, 756–60 (2d Cir. 2019). Here, plaintiff clearly seeks liability for Brown's decision to pursue the prosecution despite evidence suggesting other perpetrators. *See Kellner v. City of N.Y.*, No. 17-CV-1268 (MKB), 2021 U.S. Dist. LEXIS 177698, at *55 (E.D.N.Y. Sep. 16, 2021) ("Plaintiff cannot state a claim against the City based on Hynes' decision to prosecute Plaintiff despite knowing or having reason to know that Plaintiff was innocent[…], as Hynes was acting pursuant to state policies in deciding whether or not to prosecute Plaintiff.") Labeling Brown's role managerial or administrative does not resolve that distinction.

For these reasons, the City respectfully requests that leave to amend be denied. Before granting leave on the present submissions, the City respectfully requests full briefing on timeliness and futility. Thank you for the Court's consideration.

Respectfully submitted,

JCarnevale

John Carnevale
*Assistant Corporation Counsel*
Special Federal Litigation Division

Cc: All counsel via ECF